UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA WATTERS, MOLLY POPISH, and   :
LAURIE BURDETT,   :CIVIL ACITON NO. 3:18-CV-2117
  :
    Plaintiffs,   :(JUDGE MARIANI)
  :
    v.   :
  :
BOARD OF SCHOOL DIRECTORS OF THE   :
CITY OF SCRANTON and SCHOOL   :
DISTRICT OF THE CITY OF SCRANTON,   :
  :
    Defendants.   :
  :

## MEMORANUDM OPINION
## I. INTRODUCTION

Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. 4) is pending before the

Court. Defendants removed Plaintiffs' five-count Complaint (Doc. 1 at 8-22) from the Court

of Common Pleas of Lackawanna County, Pennsylvania, on November 2, 2018. (Doc. 1.)

They did so pursuant to 28 U.S.C. § 1331 asserting federal question jurisdiction based on

the 42 U.S.C. § 1983 claim contained in Plaintiffs' Complaint. (Doc. 1 at 2-3.) When

Plaintiffs filed their Complaint in the Lackawanna County Court of Common Pleas on

September 28, 2018, they were all tenured teachers in the Scranton School District who had

been furloughed on August 30, 2018.[1] (Compl. ¶¶ 11, 39, 41.) Plaintiffs describe the action

as "a hybrid" of an appeal of determinations made in a local agency adjudication pursuant to

---

[1] Plaintiffs' Complaint is found in Defendants' Notice of Removal, Document 1 at pages 8 to 22.

2 Pa. C.S. § 752 and a constitutional challenge to provisions of the School Code of 1949

("School Code") pursuant to the Contract Clauses of the United States and Pennsylvania

Constitutions. (Compl. Introduction (Doc. 1 at 8).) For the reasons discussed below, the

Court concludes Defendants' motion is properly granted as to Count III and the Court has

no basis to retain jurisdiction of Plaintiffs' remaining state law claims.

## II. BACKGROUND

### A.    Factual Allegations

The Board of School Directors of the City of Scranton ("the Board") held a "Special

Meeting for General Purposes" on January 25, 2018. (Compl. ¶ 25.) At the meeting, the

Personnel Committee presented "Resolution of the Intent to Suspend of the Scranton Board

of Education" ("Resolution") for vote by the Board. (Id.) The Superintendent of the

Scranton School District ("the District"), Dr. Alexis Kirijan, told the members of the Board

that the Resolution did not include program cuts with the exception of the library. (Id. ¶ 26.)

Before the January 25, 2018, meeting, the Board had neither approved nor authorized the

curtailment or elimination of any programs or the furlough of any employees. (Id. ¶ 27.)

The Board voted unanimously to pass the Resolution. (Id. ¶ 28.)

On January 28, 2018, the District's Chief Human Resources Officer issued

correspondence to twenty-eight tenured teachers, including Plaintiffs, which stated the

following in relevant part:

> It is with the utmost regret that the Board of Education and the Scranton School
> District has approved a resolution of intent to suspend you and directed that

2

you be notified pursuant to Sections 1124 and 1125.1 of the Public School Code of 1949, as amended, and the Local Agency Law (2 Pa. C.S. § 101 et seq.). This correspondence will formally notify you that this is the intent of the Board that you will be suspended from employment effective August 31, 2018 due to the economic reasons that require a reduction of professionals and/or the curtailment and/or alteration of the District's educational programs in order to conform with standards of organization and/or educational activities required by law and/or recommended by the Pennsylvania Department of Education and for economic reason. The Board of Education has approved the Resolution of Intent to Suspend at a public meeting held on January 25, 2018.

(Compl. ¶ 29.) Approximately seventy-one notices of non-renewal were issued to

temporary employees (non-tenured) teachers on the same date. (*Id.* ¶ 30.)

Consistent with the School Code, each of the twenty-eight suspended tenured

teachers submitted a timely written request to initiate a hearing before the Board for the

purpose of challenging the suspensions. (*Id.* ¶ 32.)

On March 28, 2018, the District passed a final budget which included the suspension

of teachers. (*Id.* ¶ 33.)

In May and June 2018, the District engaged in a posting and bidding process

designed to benefit displaced, tenured teachers. (*Id.* ¶ 34.) As a result of the process and

additional resignations, the District was able to "call-back" a number of tenured teachers

who had previously received furlough notices. (*Id.*) By June 22, 2018, the District

determined that seven tenured teachers, including Plaintiffs, would be furloughed. (*Id.*)

In response to Plaintiffs' challenges to their suspensions, the Board held evidentiary

hearings on July 19, 2018, and July 25, 2018. (*Id.* ¶ 35.) On August 25, 2018, the Board

convened a special meeting "to vote on the Resolution in order [t]o approve suspended

3

professional employees of the Scranton School District effective August 30, 2018, in accordance with the provisions of Section 1124 and 1125.1 of the Public School Code.'" (*Id.* ¶ 36.) Six of nine members of the Board were present. (*Id.* ¶ 37.) The vote was split three-three, and, therefore, the vote failed. (*Id.* ¶ 38.) The Board reconvened on August 30, 2018, to conduct another vote on the Resolution presented at the August 25th meeting. (*Id.* ¶ 39.) The Resolution passed nine-zero. (*Id.* ¶ 40.) As a consequence of the vote, the District's physical education, music, art, family and computer science, and industrial arts programs were curtailed. (*Id.* ¶ 42.)

The District's solicitor, who had served as the Hearing Officer during prior evidentiary hearings, issued Findings of Fact and Conclusions of Law in which he concluded that the Resolution "satisfied the district's statutory obligation." (*Id.* ¶ 43.) The Hearing Officer further concluded that the "proposed suspension should be sustained for both economic and non-economic (curtailment or alteration) of programs." (*Id.*)

Four of the seven tenured teachers who received furlough notices either found work outside the District or were called back by the District. (*Id.* ¶ 41.) Thus, Plaintiffs were the only tenured professional employees furloughed by the District. (*Id.*)

## B. Relevant Statutory Provisions

At the time they were suspended, Plaintiffs had all achieved tenure status as defined by the School Code, 24 Pa. S.A. § 11-1101(1) because each had completed at least three years of service, 24 Pa. S.A. § 11-1108: Plaintiff Popish had been employed by the District

4

as a professional employee since August of 2013; Plaintiff Watters had been employed

since September 2014; and Plaintiff Burdett had been employed since September 2015.

(Compl. ¶¶ 8-11.) As such, the School Code provision titled "Contracts; execution; form"

regarding required contracts between a school district and its professional employees, 24

P.S. § 11-1121, is relevant.

Section 11-1121 of the School Code, last amended in 1996, requires that school

districts enter into contracts as follows:

(a) In all school districts, all contracts with professional employes shall be in writing, in duplicate, and shall be executed on behalf of the board of school directors by the president and secretary and signed by the professional employe.

(b)(1) Each board of school directors in all school districts shall hereafter enter into contracts, in writing, with each professional employe initially employed by a school district prior to June 30, 1996, who has satisfactorily completed two (2) years of service in any school district of this Commonwealth.

(2) Each board of school directors in all school districts shall hereafter enter into contracts, in writing, with each professional employe initially employed by a school district, on or after June 30, 1996, who has satisfactorily completed three (3) years of service in any school district of this Commonwealth.

(c) Contracts under subsection (b) shall contain only the following:

"IT IS AGREED by and between .......... Professional Employe, and the Board of Directors (or Board of Public Education) of the school district of .........., Pennsylvania, that said professional employe shall, under the authority of the said board and its successors, and subject to the supervision and authority of the properly authorized superintendent of schools or supervising principal, serve as a professional employe in the said school district for a term of ... months, for an annual compensation of $.........., payable monthly or semi-monthly during the school term or year, less the contribution required by law to

5

be paid to the Public School Employes' Retirement Fund, and less other proper deductions for loss of time.

"This contract is subject to the provisions of the 'Public School Code of 1949' and the amendments thereto.

"AND IT IS FURTHER AGREED by the parties hereto that none of the provisions of this act may be waived either orally or in writing, and that this contract shall continue in force year after year, with the right of the board of school directors (or board of public education) to increase the compensation over the compensation herein stated, from time to time, as may be provided under the provisions and proper operation of the established salary schedule, if any, for the school district, subject to the provisions of law, without invalidating any other provision of this contract, unless terminated by the professional employe by written resignation presented sixty (60) days before resignation becomes effective, or by the board of school directors (or board of public education) by official written notice presented to the professional employe: Provided, That the said notice shall designate the cause for the termination and shall state that an opportunity to be heard shall be granted if the said professional employe, within ten (10) days after receipt of the termination notice, presents a written request for such hearing."

24 P. S. § 11-1121.

Plaintiffs each executed separate contracts ("Tenure Contracts") with the Board upon

their attainment of tenure. (Compl. ¶ 15.) The contracts were in "substantially the same

form" as provided in 24 Pa. S.A. § 11-1121. (Compl. ¶ 15.)

Because Plaintiffs' allegations relate to the rationale for the Board's suspension

decision, the School Code's "Causes for suspension" provision, 24 P.S. § 11-1124, is

relevant. Until November 2017, § 11-1124 provided as follows:

(a) Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) substantial decrease in pupil enrollment in the school district;

6

(2) curtailment or alteration of the educational program on recommendation of the superintendent and on concurrence by the board of school directors, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

(3) consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes;

(4) when new school districts are established as the result of reorganization of school districts pursuant to Article II., subdivision (i) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes.

24 Pa. C.S. § 11-1124.

In November 2017, the Pennsylvania Legislature passed what is known as Act 55 of 2017 ("Act 55") which, *inter alia*, added subsection (a)(5) to § 11-1124 allowing for suspension based on "economic reasons that require a reduction in professional employes." 24 Pa. C.S. § 11-1124(a)(5). Suspensions under § 11-1124(a)(5) are subject to specific statutory mandates. 24 Pa. C.S. § 11-1124(c) and (d). The 2017 amendments to § 11-1124 directed that "[a] school district may not use an employe's compensation in determining which professional employes to suspend, but shall use the procedures in section 11-1125.1 to determine the order in which professional employes are suspended." 24 Pa. C.S. § 11-1124(a.1)(1).

Pursuant to § 11-1125.1, as amended by Act 55, the order of suspension of professional employees is guided by the results of the employee's two most recent

7

performance evaluations.[2] 24 Pa. C.S. § 11-1125.1(a). Section 11-1125.1 also provides

"[a] school entity shall realign its professional staff so as to ensure that more senior

employes are provided with the opportunity to fill any positions within the school entity for

which they are certificated and which are being filled by less senior employes, subject to the

order specified in subsection (a)," 24 Pa. C.S. § 1125.1(c.1).[3]

## C.   **Procedural Background**

Plaintiffs' Complaint contains the following counts: Count I- Local Agency Code

Appeal Failure to Comply with Section 1124(a)(2) of the Pennsylvania School Code of 1949;

Count II - Local Agency Code Appeal Failure to Comply with Section 1124(a)(2) of the

---

[2] Before the 2017 amendment, § 11-1125.1(a) provided in pertinent part that "Professional employes shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment."

[3] Section 11-1125.1(c.1) was added with the 2018 Amendments to § 11-1125.1 (effective July 1, 2018). A similar section, 11-1125.1(c), which was deleted with the 2017 amendments had provided that "[a] school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes,"

Act 55 also added subsection (f) to § 1124 which provides the following:

(1) A collective bargaining agreement negotiated by a school district and an exclusive representative of professional employes in accordance with the act of July 23, 1970 (P.L. 563, No. 195), known as the "Public Employe Relations Act," after the effective date of this subsection may not prohibit the suspension of professional employes for economic reasons other than as provided for in this section.

(2) A provision in any agreement or contract in effect on the effective date of this subsection that prohibits the suspension of professional employes for economic reasons in conflict with this section shall be discontinued in any new or renewed agreement or contract or during the period of status quo following an expired contract.

24 Pa. C.S. § 11-1124(f).

8

Pennsylvania School Code of 1949 (Act 55); Count III – Violation of 42 U.S.C. § 1983 – Substantial Impairment of Contractual Rights in Violation of the United States Constitution, Article I, Section 10, Clause 1; Count IV – Impairment of Article I, Section 17 of the Pennsylvania Constitution; and Count V – Declaratory and Injunctive Relief. (Compl. (Doc. 1 at 15-22).)

With Defendants' Motion to Dismiss Plaintiffs' Complaint filed pursuant to Federal Rules of Civil Procedure 81(c) and 12(b)(6), they request that the Court dismiss Plaintiffs' Complaint with prejudice. (Doc. 4 at 1-2.) In their supporting brief, they specifically assert that Plaintiffs' demand for a jury trial as to Counts I and II should be stricken (Doc. 11 at 17) and Counts III, IV, and V should be dismissed in their entirety (*id.* at 18-38). Defendants' motion is now fully briefed and ripe for disposition.

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. 679).

If a court determines that a complaint is subject to Rule 12(b)(6) dismissal, "a district

court must permit a curative amendment unless such an amendment would be inequitable

or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant
> moves to dismiss it, unless the district court finds that amendment would be inequitable
> or futile, the court must inform the plaintiff that he or she has leave to amend the
> complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Allegations that Defendants did not adhere to proper procedures in suspending them

pursuant to 24 Pa. C.S. § 1124(a)(2) and (a)(5) form the basis of Plaintiffs' Local Agency

Code appeals in Counts I and II. (Compl. ¶¶ 44-60.)  In support of their constitutional

claims, Plaintiffs assert that "tenured status constitutes an enforceable contractual right,

conferred by the Pennsylvania legislature, school boards and districts upon a professional

employe who meets the conditions of tenure, such as Plaintiffs." (Compl. ¶ 22.)  They

further state that

> [a]n employee's contractually enforceable tenure is not honored by Act 55.
> Tenured teachers may be suspended for economic reasons – that is, reasons
> other than the specific scenarios enumerated in P.S. § 11-1124(a)(1)-(4).  At
> the time Plaintiffs attained tenured status – prior to 2017 – these scenarios
> were the only ones in which [sic] available to Defendants to suspend Plaintiffs.

Compl. ¶ 23.)  These allegations form the basis of Plaintiffs' constitutional claims, Counts III

and IV. (*See* Compl. ¶¶ 61-74.)

11

Defendants assert their motion should be granted for the following reasons: 1) Plaintiffs' request for a jury trial as to Counts I and II should be stricken because the local agency determination was complete; 2) Plaintiffs' 42 U.S.C. § 1983 action based on an alleged Contracts Clause violation fails as a matter of law; 3) Plaintiffs' claims pursuant to Article 1, Section 17 of the Pennsylvania Constitution fail as a matter of law; 4) Count V for declaratory and injunctive relief must be dismissed; and 5) amendment would be futile. (Doc. 11 at 13.)

Because Defendants removed this action from state court pursuant to federal question jurisdiction grounded in Plaintiffs' 42 U.S.C. § 1983 claim (Doc. 1 at 1-3), the Court will first consider whether Defendants have shown that this federal claim must be dismissed.

## A.     **42 U.S.C. § 1983**

Defendants contend that Plaintiffs' 42 U.S.C. § 1983 claim for violation of the Contracts Clause in Count III fails as a matter of law.  (Doc. 11 at 18.)  They base this assertion on four grounds: 1) there is no private cause of action pursuant to § 1983 for a violation of the Contracts Clause (*id*.); 2) Plaintiffs cannot identify a "contractual right" protected by the Contracts Clause (*id*. at 21); 3) assuming *arguendo* that Plaintiffs are able to identify a contractual right "sufficient to maintain a cause of action for violation of the Contracts Clause, Plaintiffs are unable as a matter of law to establish that the amendments to the Public School Code 'substantially impaired' their contractual rights without a reasonable, legitimate public purpose" (*id*. at 26); and 4) assuming *arguendo* "that the Court

12

concludes that there is a private cause of action for a violation of the Contracts Clause, that Plaintiffs have a contractual right, and that such right was substantially impaired, any resulting impairment was clearly reasonable and necessary to accomplish a legitimate public purpose" (*id.* at 30). Plaintiffs refute each of Defendants' arguments. (Doc. 18 at 11-29.)

## 1. Private Cause of Action Under 42 U.S.C. § 1983

Defendants maintain that there is no private cause of action under § 1983 for a Contracts Clause violation based on the United States Supreme Court's decision in *Carter v. Greenhow*, 114, U.S. 317 (1885).[4] (Doc. 11 at 18.) Plaintiffs respond that general § 1983 considerations and the Supreme Court's consideration of *Carter* in *Dennis v. Higgins*, 498 U.S. 439, 443 (1991), indicate that a plaintiff may bring a § 1983 claim for violation of the Contracts Clause. (Doc. 18 at 13-16.) The parties acknowledge a circuit split on the issue with the Fourth and Sixth Circuits concluding that *Carter* precludes a § 1983 action grounded in the Contracts Clause and the Ninth Circuit concluding that such an action is available. (Doc. 11 at 19-20; Doc. 18 at 15-16.) For the reasons discussed below, the Court will, for purposes of consideration of Defendants' motion, adopt the narrow reading of

---

[4] Defendants note "that some courts refer to the applicable provision as the 'Contract Clause' while others identify it as the 'Contracts Clause.'" (Doc. 11 at 18 n.1.) They further note that they will use the term "Contracts Clause" based on Justice Kagan's use of it in *Sveen v. Melin*, 138 S. Ct. 1815 (June 11, 2018). (*Id.*) The Court will do the same.

*Carter* set out in *Dennis* and follow the reasoning of the Ninth Circuit which has found that a plaintiff may bring a § 1983 claim for violation of the Contracts Clause.

The Contracts Clause of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." Art. I, § 10, cl. 1. As stated in *Transport Workers Union of America, Local 290 v. Southeastern Pennsylvania Transportation Authority*, 145 F.3d 619 (3d Cir. 1998),

> Contracts enable individuals [and public entities] to order their ... affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them." *Allied Structural* [*Steel Co. v. Spannaus,* 438 U.S. 234, 245 (1978)]. The purpose of the Contract Clause is to protect the legitimate expectations that arise from such contractual relationships from unreasonable legislative interference.

145 F.3d at 622. "Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 434 (1934)).

The question of whether a private right of action exists for a Contracts Clause violation was succinctly summarized in *Elliott v. Board of School Trustees of Madison Consolidated Schools*, 876 F.3d 926 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 2624 (2018).

> In *Carter v. Greenhow*, 114 U.S. 317, 5 S.Ct. 928, 29 L.Ed. 202 (1885), the Supreme Court found that there was no federal question jurisdiction over the plaintiff's Contract Clause claim. Using a predecessor of § 1983, the plaintiff challenged a state law that affected his state-issued bonds by prohibiting him

14

from using his coupons to pay his property taxes. *Id.* at 321–23, 5 S.Ct. 928. Some courts have read *Carter* broadly as prohibiting any Contract Clause claims under § 1983. *See Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017); *Crosby v. City of Gastonia*, 635 F.3d 634, 640 (4th Cir. 2011). But Supreme Court and other opinions reflect another view, reading *Carter* as based more narrowly on the way the particular claim in that case was pled and the failure to satisfy the amount-in-controversy requirement applicable at the time. *See Dennis v. Higgins*, 498 U.S. 439, 451 n.9, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991), quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 613 n.29, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 886–87 (9th Cir. 2003) (per curiam); see also *White v. Greenhow*, 114 U.S. 307, 307–08, 5 S.Ct. 923, 29 L.Ed. 199 (1885) (allowing claim for damages for violation of Contract Clause in companion case to *Carter*); *Kaminski*, 865 F.3d at 350 (Moore, J., dissenting) (arguing for limited scope of *Carter*)

*Elliott*, 876 F.3d at 932-33. *Elliott* was able to bypass this "potentially difficult issue" because it did not affect the court's subject matter jurisdiction and the defendants had waived the potential defense. *Id.* at 933.

Defendants correctly note that there is no Third Circuit precedent on this issue and urge that the Court adopt the Fourth and Sixth Circuits' interpretation of *Carter* and hold that no cognizable cause of action exists under § 1983 for violations of the Contracts Clause. (Doc. 11 at 21.) Identifying the well-recognized principle that § 1983 is to be broadly interpreted and advocating a narrow reading of *Carter*, Plaintiffs posit that the Ninth Circuit's *Santa Ana* decision more closely tracks the Supreme Court's guidance on the issue set out in *Dennis*. (Doc. 18 at 16.) The Court finds Plaintiffs' position persuasive.

It is well-established that 42 U.S.C. § 1983 is to be broadly construed. *In Dennis v. Higgins*, the Supreme Court explained the basis for the principle:

> A broad construction of § 1983 is compelled by the statutory language, which speaks of deprivations of *"any* rights, privileges, or immunities secured by the Constitution and laws." (Emphasis added.) Accordingly, we have "repeatedly held that the coverage of [§ 1983] must be broadly construed." *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 105, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). The legislative history of the section also stresses that as a remedial statute, it should be " 'liberally and beneficently construed.' " *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 684, 98 S.Ct. 2018, 2032, 56 L.Ed.2d 611 (1978) (quoting Rep. Shellabarger, Cong.Globe, 42d Cong., 1st Sess., App. 68 (1871)).

*Dennis,* 498 U.S. at 443.

In finding that suits for violations of the Commerce Clause could be brought under § 1983, Justice White, writing for the majority, countered the minority's view that a private cause of action could not be brought under § 1983 for a Commerce Clause violation with specific reference to the dissent's reliance on the Court's 1885 *Carter v. Greenhow* decision:

> In arguing that the Commerce Clause does not secure any rights, privileges, or immunities within the meaning of § 1983, the dissent relies upon *Carter v. Greenhow,* 114 U.S. 317, 29 L.Ed. 202, 5 S.Ct. 928 (1885). See *post,* at 457–458. This Court, however, has already given that decision a narrow reading, stating that the case "held as a matter of pleading that the particular cause of action set up in the plaintiff's pleading was in contract and was not to redress deprivation of the 'right secured to him by that clause of the Constitution' [the contract clause], to which he had 'chosen not to resort.'" *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 613, n. 29, 60 L.Ed.2d 508, 99 S.Ct. 1905 (1979); see also *Hague v. Committee for Industrial Organization,* 307 U.S. 496, 527, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (opinion of Stone, J.) (emphasis added).

*Dennis,* 498 U.S. at 451 n.9.

In *Santa Ana*, the Ninth Circuit relied on *Dennis* and adopted a narrow reading of *Carter*, stating that

> [t]he [defendant's] argument that section 1983 provides no relief for a party deprived of its rights under the Contracts Clause is without merit. Section 1983 provides for liability against any person acting under color of law who deprives another "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The rights guaranteed by section 1983 are "liberally and beneficently construed." *Dennis v. Higgins,* 498 U.S. 439, 443, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 684, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The right of a party not to have a State, or a political subdivision thereof, impair its obligations of contract is a right secured by the first article of the United States Constitution. A deprivation of that right may therefore give rise to a cause of action under section 1983.
>
> The Supreme Court's decision in *Carter v. Greenhow,* 114 U.S. 317, 5 S.Ct. 928, 29 L.Ed. 202 (1885), is not to the contrary. The Supreme Court has explicitly given *Carter* a narrow reading and rejected the interpretation advanced by the [defendant]. *See Dennis,* 498 U.S. at 451 n. 9, 111 S.Ct. 865 (stating that *Carter* can only be read to have "held *as a matter of pleading* that the particular cause of action set up in the plaintiff's pleading was in contract and was not to redress deprivation of the right secured to him by that clause of the Constitution [the contract clause], to which he had chosen not to resort.") (emphasis added) (internal quotations and citations omitted).

*Santa Ana*, 336 F.3d at 887.

For the purpose of consideration of Defendants' motion, the Court concludes that *Santa Ana* best applies relevant Supreme Court guidance regarding a narrow reading of *Carter* and broad application of § 1983. Therefore, for present purposes, the Court does not adopt Defendants' argument that the Fourth and Sixth Circuits' determinations that a private cause of action based on a Contracts Clause violation cannot be brought under § 1983 are

17

more in line with *Carter*.[5] (*See* Doc. 11 at 21.) Finding on this basis that Plaintiffs have a private right of action to bring a Contracts Clause violation under § 1983, the Court will now turn to Defendants' argument that Plaintiffs cannot identify a "contractual right" protected by the Contracts Clause (Doc. 11 at 21).

## 2.    Contractual Right Protected by the Contracts Clause

Defendants assert that Plaintiffs cannot show that the School Code created a "contractual right" sufficient to sustain a Contracts Clause violation and, therefore, their constitutional claims based on a violation of the Contracts Clause must fail. (Doc. 11 at 21.) Plaintiffs respond that their statutorily granted right to tenure is a contractual right. (Doc. 18 at 18.) For the reasons discussed below, the Court concludes that Defendants have not shown that Plaintiffs cannot establish the existence of contractual right cognizable under the Contracts Clause.

To prove a violation of the Contracts Clause, "a plaintiff must demonstrate that 'a change in state law has operated as a substantial impairment of a contractual relationship.'" *Transport Workers*, 145 F.3d at 621 (quoting *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (internal quotation omitted)). "Contract Clause analysis requires three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a

---

[5] The Court notes that Defendants cite *Dennis* for the proposition that "[t]he Contracts Clause can be said to secure individual rights 'only indirectly and incidentally.'" (Doc. 11 at 18 (quoting *Dennis v. Higgins*, 498 U.S. at 456).) This statement deserves no further consideration in that the quoted language is found in the dissenting opinion authored by Justice Kennedy and joined by Chief Justice Rehnquist, 496 U.S. at 457, which Justice White countered as set out in the text.

law has impaired that contractual relationship; and (3) whether the impairment is substantial." *Id.* (citing *Romein*, 503 U.S. at 186).

The parties come to opposite conclusions on the first threshold issue which hinges on whether the statutory provision upon which Plaintiffs base their asserted contractual right to tenure can be construed as creating a contractual relationship. While the parties agree that there is a presumption against interpreting statutes as contractual agreements (Doc. 11 at 24; Doc. 18 at 18-19), Plaintiffs maintain they have overcome the presumption whereas Defendants assert they cannot make the required showing (Doc. 11 at 25-26; Doc. 18 at 19-21).

The Supreme Court discussed the issue of the interpretation of laws as contracts in *National R.R. Passenger Corp. v. Atchison Topeka and Santa Fe Ry. Co.*, 470 U.S. 451 (1985).

> For many decades, this Court has maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Dodge v. Board of Education*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937). See also *Rector of Christ Church v. County of Philadelphia*, 24 How. 300, 302, 16 L.Ed. 602 (1861) ("Such an interpretation is not to be favored"). This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 104–105, 58 S.Ct. 443, 447–448, 82 L.Ed. 685 (1938). Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body. Indeed, " '[t]he continued existence of a government would be of no great value, if by implications and presumptions, it was disarmed of the powers

necessary to accomplish the ends of its creation.' " *Keefe v. Clark,* 322 U.S. 393, 397, 64 S.Ct. 1072, 1074, 88 L.Ed. 1346 (1944) (quoting *Charles River Bridge v. Warren Bridge,* 11 Pet. 420, 548, 9 L.Ed. 773 (1837)). Thus, the party asserting the creation of a contract must overcome this well-founded presumption, *Dodge, supra,* 302 U.S., at 79, 58 S.Ct., at 100, and we proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation.

In determining whether a particular statute gives rise to a contractual obligation, "it is of first importance to examine the language of the statute." *Dodge v. Board of Education, supra,* at 78, 58 S.Ct., at 100. See also *Indiana ex rel. Anderson v. Brand, supra,* 303 U.S., at 104, 58 S.Ct., at 447 ("Where the claim is that the State's policy embodied in a statute is to bind its instrumentalities by contract, the cardinal inquiry is as to the terms of the statute supposed to create such a contract"). "If it provides for the execution of a written contract *on behalf of the state* the case for an obligation binding upon the state is clear." 302 U.S., at 78, 58 S.Ct., at 100 (emphasis supplied). But absent "an adequate expression of an actual intent" of the State to bind itself, *Wisconsin & Michigan R. Co. v. Powers,* 191 U.S. 379, 386–387, 24 S.Ct. 107, 108–109, 48 L.Ed. 229 (1903), this Court simply will not lightly construe that which is undoubtedly a scheme of public regulation to be, in addition, a private contract to which the State is a party.

*Nat'l R.R. Passenger Corp.,* 470 U.S. at 465–67.

*Dodge* and *Anderson*, both authored by Justice Roberts in the 1937-1938 term of the

Supreme Court, considered the question of whether state statutes addressing teachers'

rights created contractual agreements. The decisions reached opposite conclusions on the

basis of factual differences: *Dodge* determined that an Illinois statute setting the amount of

annuity payments to retired teachers did not create a contract, 302 U.S. at 75-81; *Anderson*

acknowledged and distinguished the *Dodge* holding in determining that an Indiana statute

establishing tenure rights created a contract, 303 U.S. at 100-109.

Defendants rely primarily on *Dodge* and the strong presumption against interpreting statutes as contractual agreements. (Doc. 11 at 24.) Plaintiffs argue that both *Dodge* and *Anderson* support the existence of a contractual agreement in the School Code's tenure provisions. (Doc. 18 at 20.) Before addressing the parties' substantive arguments, the Court notes, as a preliminary matter, the question of whether there is relevant state law on the issue must be considered.

Although "[t]he question whether a contract was made is a federal question for purposes of Contract Clause analysis [even when] it turns on issues of general or purely local law," *Romein,* 503 U.S. at 187, state law decisions related to the contractual issue are to be considered in the analysis, *Phelps v. Bd. of Educ. of Town of W. New York,* 300 U.S. 319, 322 (1937) (the "court is not bound by the decision of a state court as to the existence and terms of a contract, the obligation of which is asserted to be impaired, but where a statute is claimed to create a contractual right we give weight to the construction of the statute by the courts of the state.").

In *Moffitt v. Tunkhannock Area Sch. Dist.,* 160 F. Supp. 3d 786, 801 (M.D. Pa. 2016), this Court noted "Pennsylvania case law provides little guidance" on the issue of when a statutory provision is a contract. *Moffitt* cited *Young v. Bethlehem Area Vo–Tech Sch.,* Civ. A. No. 06–CV–2285, 2007 WL 674617, at *13 (E.D. Pa. Feb. 28, 2007), in support of the observation. *Id.* In *Young,* the district court stated that it was "aware of no case applying Pennsylvania law to decide whether a statute, or something perhaps resembling a statute

21

(such as an Act 93 administrative compensation plan), is a contract." The parties do not present, and the Court has not found, any recent development on this issue in Pennsylvania law.

In support of their argument that Plaintiffs have no contractual basis for their Contracts Clause claim, Defendants state that "[i]t is well-established that '[t]he existence of a Pennsylvania statute which provides for termination of public school employees only for specific causes does not create a contract between Plaintiff and her employer, the School District.'" (Doc. 11 at 24 (quoting *Moffitt*, 160 F. Supp. 3d at 801 (citing *Judge v. Shikellamy Sch. Dist.*, 135 F. Supp. 3d 284, 297–98 (M.D. Pa. 2015)).) The Court rejects Defendants' conclusion.

First, *Moffit* is factually distinguishable in that it considered a state law breach of contract claim dealing with a different Pennsylvania statute, known as "Act 93," and concluded it did not evidence an intent to serve as the school district's contractual obligation. 160 F. Supp. 3d at 800-01. Act 93, 24 P.S. § 11-1164, "provide[s] a means by which compensation matters affecting school administrators can be resolved within the framework of a management team philosophy." 24 P.S. § 11-1164(b). It does not contain contractual language or obligate the school district to contract with administrators. *See id.*

In addition to the contextual distinction between *Moffitt* and the case at bar, Defendants' assertion is undermined by the fact that *Moffitt* quoted *Judge* and *Judge*, which also considered Act 93, provided no citation for the quoted material. 160 F. Supp. 3d at 801;

135 F. Supp. 3d at 297. Thus, although Defendants conclude, based on the allegedly "well-established" principle that "Plaintiffs cannot establish that they have a 'contractual right' subject to the considerations of the Contracts Clause" (Doc. 11 at 25; *see also id.* at 25-26), neither *Moffitt* nor *Judge* provide the suggested basis for the conclusion. (Doc. 11 at 24-25.)

Defendants' reliance on the Pennsylvania Commonwealth Court's decision in *Commonwealth Ass'n of Sch. Adm'rs ex rel. Axelrod v. Bd. of Educ.*, 740 A.2d 1225, 1230–31 (Pa. Cmwlth. Ct. 1999), (Doc. 11 at 25; Doc. 19 at 10) is similarly unavailing. The Commonwealth Court considered a different statutory provision, spoke in generalities, and mischaracterized the scope of *Dodge* with the statement that "rights granted under a statute are not contractual in nature, vest no contractual rights in anyone, and no constitutional rights are implicated if they are changed or eliminated." *Id.* at 1231 (citing *Dodge*, 302 U.S. 74). Rather than the blanket rejection of "whether a law tenders a contract to a citizen," 302 U.S. at 78, *Dodge* set out factors relevant to the consideration of whether the party asserting such a contract had shown otherwise, *id.* at 78-79.

Defendants' misplaced reliance on *Moffitt* and *Commonwealth Ass'n of Sch. Adm'rs* renders unsubstantiated their assertion that "Plaintiffs are unable to demonstrate that the Public School Code created a 'contractual right' sufficient to sustain a Contracts Clause violation." (Doc. 11 at 26.) Defendants do not conduct the detailed statutory analysis

23

required by the Supreme Court. *See, e.g. Anderson*, 303 U.S. at 100.[6] Therefore, they

have not satisfied their burden of showing that it is not plausible that Plaintiffs can prevail on

---

[6] It is noteworthy that Defendants do not cite to *Anderson*. (*See* Docs. 11, 19.) They distinguish *Elliott* on the basis that "[t]he *Elliott* Court noted that the Indiana Teachers Tenure Law was '[u]nlike tenure statutes in many other states' and explained that the bill 'removed the protection for tenured teachers in layoffs,' *Elliott*, 876 F. 3d at 929" (Doc. 19 at 11). Their citation is accurate, but it fails to acknowledge that *Anderson* is a source of the distinction between Indiana and other states, *Elliott*, 876 F.3d at 929. Importantly, with Defendants' distinction of *Elliott* and the case at bar, they do not address *Anderson's* consideration of the existence of a contract grounded in a state statute, an analysis pertinent to the inquiry here. As one of many factors considered, *Anderson* recognized that earlier Indiana state court cases had interpreted a teacher's right to continued employment created pursuant to the statute at issue to be contractual but, in the circumstances considered by the Supreme Court, the Supreme Court of Indiana did not follow that precept. *See* 303 U.S. at 100, 105. Therefore, in its analysis, *Anderson* focused on other relevant factors.

A review of factors considered in *Anderson* shows that the statute at issue here arguably has features similar to those found indicative of a contractual agreement in *Dodge* and found to have created a contract in *Anderson*. *Anderson* found it significant that the relevant state statutory provisions "required the execution of written contracts between teachers and school corporations, specified certain subjects with which such contracts must deal, and required that they be made a matter of public record." 303 U.S. at 104. The Court also found significance in the following facts:

> [t]he title of the act is couched in terms of contract[,] [i]t speaks of the making and canceling of indefinite contracts[,] . . . [the] indefinite contract is to remain in force unless succeeded by a new contract signed by both parties or canceled as provided in [another] section[,] . . . such indefinite contracts may be canceled by the school corporation only in the manner specified [and] [t]he admissible grounds of cancellation, and the method by which the existence of such grounds shall be ascertained and made a matter of record, are carefully set out.

303 U.S. at 105.

Here 24 P.S. § 11-1121 is titled "Contracts; execution; form" and requires all school districts to enter into written contracts with professional employees who have satisfactorily completed a set term of service. 24 P.S. § 11-1121(b). As set out above, *see supra* pp 5-6, the statute also mandates the precise language of the contracts. 24 P.S. § 11-1121(c). The mandated language includes the term of the contract ("this contract shall continue in force year after year"); it includes specific reference to the provisions of the School Code ("[t]his contract is subject to the provisions of the 'Public School Code of 1949' and the amendments thereto")[6]; immediately following the "subject to" provision, it states that the parties to the contract agree that the provisions of the act cannot be waived ("AND IT IS FURTHER AGREED by the parties hereto that none of the provisions of this act may be waived either orally or in writing"); and it provides for the exclusive methodology for termination of the contract. *Id.*

their § 1983 claim based on the lack of a contractual right. With this determination, the

Court will assume, for purposes of this motion only, that a contractual right is established in

the Pennsylvania School Code statutory scheme. Whether that contract was impaired by

the passage of Act 55, as alleged by Plaintiffs, is a separate and pivotal issue.

## 3.  Substantial Impairment of Contractual Rights

Defendants contend that Plaintiffs, as a matter of law, cannot show that the

amendments to the School Code "substantially impaired" their contractual rights. (Doc. 11

---

As noted above, *Anderson* is distinguishable because earlier Indiana state court cases had interpreted a teacher's right to continued employment as contractual and here Pennsylvania courts have not done so. However, *Anderson* did not decide the case based on state precedent and advised as a general matter that courts should not do so. 303 U.S. at 100. Further, *Anderson* reviewed state court cases which had found the relationship created by Indiana statute to be contractual and several features of the Indiana statute considered significant by the state courts are arguably analogous to features of the School Code. "'The position of a teacher in the public schools is not a public office, but an employment by contract between the teacher and the school corporation. The relation remains contractual after the teacher has, under the provisions of a Teachers' Tenure Law, become a permanent teacher—but the terms and conditions of the contract are thereafter governed primarily by the statute.'" 303 U.S. at 105 (quoting *In School City of Elwood v. State ex rel. Griffin et al.*, 180 N.E. 471, 474 (Ind. 1932)). "'The local school corporations are agents of the state in the administration of the public schools and the General Assembly has the power to prescribe the terms of the contract to be executed by these agents.'" 303 U.S. at 107 (quoting *Kostanzer v. State*, 187 N.E. 337, 341 (Ind. 1933)). "'The source of authority for the so-called permanent teacher's contract is the statute. The Legislature need not have provided for such contracts, but, since it did so provide, the entire statute, with all of its provisions, must be read into and considered as a part of the contract.'" 303 U.S. at 107 (quoting *Arburn v. Hunt*, 191 N.E. 148, 149 (Ind. 1934)).

Importantly, *Anderson* distinguished the statute at issue in *Dodge* with that at issue in the case before it: the statute at issue in *Dodge* "did not purport to bind [the board of education] by contract to the payment of annuities, and similar legislation in respect of other municipal employees had been consistently construed by the courts as not creating contracts." 303 U.S. at 107 (citing *Dodge*, 302 U.S. 74). Here the School Code binds school districts by contract to its terms with the mandated contract and no state courts have consistently construed legislation using the contractual language found in the School Code as not creating contracts.

at 28.) Plaintiffs assert that Act 55 is a substantial impairment to teacher tenure rights. (Doc. 18 at 21.) The Court concludes that Plaintiffs have not pled a plausible claim that Act 55 substantially impaired their contractual rights.

The Court of Appeals for the Third Circuit has explained the relevant inquiry: "we must determine whether there has been a substantial impairment of a contractual relationship by inquiring whether legitimate expectations of the plaintiffs have been substantially thwarted." *Transp. Workers Union*, 145 F.3d at 622. The Supreme Court had earlier explained that

> the severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation.
>
> The severity of an impairment of contractual obligations can be measured by the factors that reflect the high value the Framers placed on the protection of private contracts. Contracts enable individuals to order their personal and business affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them.

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 at 245 (1978). The Court has found it relevant whether a plaintiff can seriously contend that he was substantially induced to enter into the contract based on the right at issue and whether he interpreted the right to be "of everlasting effect." *Id.* at 244 n.14 (quoting *El Paso v. Simmons*, 379 U.S. 497, 514 (1965)). More recently, pointing to *Allied Structural Steel* and *El Paso*, the Court summarized the "substantial impairment" inquiry as follows: "the Court has considered the extent to which

the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen v. Mein*, 138 S. Ct. 1815, 1822 (citing *Allied Structural Steel*, 438 U.S. at 244; *El Paso*, 379 U.S. at 514-15).

Based on Supreme Court precedent, *Elliott* broke the relevant inquiry into two questions: "[f]irst, was the impaired term a 'central undertaking' of the bargain such that it 'substantially induced' teachers to enter their contracts? . . . [and] [s]econd, was the change in law foreseeable, meaning that the risk of change was reflected in the original contract?" *Elliott*, 876 F.3d at 934 (citing *El Paso*, 379 U.S. at 514; *Energy Reserves*, 459 U.S. at 413–16).

In their supporting brief, Defendants argue that Plaintiffs cannot show their rights have been substantially impaired because they knew their suspensions would be controlled by the School Code and its amendments, and, therefore, their "reasonable expectations include the possibility that the legislature would be able to amend the Public School Code to include additional mechanisms by which a professional employee could be suspended." (Doc. 11 at 29-30.)

Plaintiffs respond that

> Defendants' argument, at its essence, would suggest that this proviso has effectively inoculated any state actor from any contractual obligation that a legislature may choose to substantially alter or eliminate—however arbitrary or baseless the reason may be. Such a position is untenable, and requires such an overly broad application of the concept of "legitimate expectation" as to render it virtually meaningless. All legislation is subject to alteration or

27

modification by amendment — whether or not the possibility of such is specifically set forth within its text. The impact of these laws do not waiver and their validity or impact are not altered by some potential, future event that may theoretically occur. *See Elliott*, 876 F.3d at 936 ("One can anticipate that any state law may change in the future, but *retroactive application* to impair existing contract rights and reliance interests is another question.") (emphasis added). Such an expansive interpretation would surely turn the contract clause into "'dead letter', contrary to the instruction of *Spannaus* that 'the Contracts Clause remains part of the Constitution.'" *Ass'n of Surrogates*, 940 F.2d at 773 (quoting *Allied Structural Steel Comp. v. Spannaus*, 338 U.S. 234, 241 (1978)).

(Doc. 18 at 24-25.)

Pointing to cases which have found substantial impairment of contractual rights where contracted-for wages have been reduced or deferred, Plaintiffs contend, "[i]t would belie reason to suggest that . . . the loss of contracted-for tenure and termination thereafter does not" substantially impair contractual rights. (Doc. 18 at 22.) Plaintiffs proceed to argue that

Act 55 plainly operates as a substantial impairment of Plaintiffs' employment contracts. Here, the impairment is particularly severe, as Plaintiffs faced and continue to face indefinite suspension of their employment. As the impairment was severe, this Court should exercise a high level of scrutiny in reviewing Defendants' impairment of Plaintiffs' employment contracts. *Energy Reserves*, 459 U.S. at 411. Although "[t]otal destruction of contractual expectations is not necessary for a finding of substantial impairment[,]" *id.*, the converse is certainly true—where contractual expectations were totally or virtually destroyed, as here, substantial impairment is present. The reliance interests in this case are also strongly present.

Central to the employment relationship between a teacher and their public employer is the employee's reliance upon the state's and the District's promise of tenure in their contracts. For public school teachers:

The promise of job security, especially during layoffs, lies close to the core of teacher tenure. Having job security, even in tough

28

> economic times, was a central term to induce people to become teachers and seek tenure in Indiana. It is a term with significant value to teachers, who as a matter of economics have traded higher salaries for the protections that tenure offers over the course of a career.

*Elliott*, 876 F.3d at 934. Had tenure not been part of the deal, teachers would likely have demanded (through their unions) higher compensation to cover employment instability. Since Plaintiffs had tenure, it was certainly reasonable for them to rely on that promise and accept a lower level of compensation in exchange for the value of tenure. Defendants cannot have it both ways —they cannot provide lower compensation while Plaintiffs rely on tenure and at the same time break their promise of tenure whenever they think it economically in their interest.

(Doc. 18 at 22-23.)

Defendants reply that Plaintiffs knew, at all times, that they were subject to suspension. (Doc. 19 at 12.) This is indisputably true in that, as set out above, the School Code, pre-Act 55, provided four bases for suspension. The parties do not discuss the precise impact of the Act 55 economic basis for suspension found in § 11-1124(a)(5) which Plaintiffs contend is the provision by which their "contractually enforceable tenure status is not honored" (Compl. ¶ 23). Rather, the parties speak in generalities: Plaintiffs' arguments are based on Act 55 and tenure generally (Doc. 18 at 22-25); Defendants' refute Plaintiffs' generic arguments and rely on the amendment language in the statute and contracts between Plaintiffs and the District (Doc. 19 at 12-18).

The Court will first focus on Defendants' core argument which is that legitimate expectations cannot be thwarted by an amendment to the statute when the statutory provision which creates the alleged contract contains the express amendment language

contained here ("[T]his contract is subject to the provisions of the 'Public School Code of 1949' and the amendments thereto," 24 P.S. § 11-1121(c)). (Doc. 19 at 17; *see also* Doc. 11 at 29-30.) Defendants assert that "[t]o disregard this express legislative provision, as the Plaintiffs argue, would render it completely meaningless and mere surplusage, requiring this Court to disregard the plain language and clear meaning of the applicable provisions of the Public School Code." (*Id.*)

Plaintiffs do not directly address the statutory/contractual provision upon which Defendants rely, nor do they provide an alternative interpretation of the statutorily mandated amendment language found in § 11-1121(c). Their notation of the general proposition that "all legislation is subject to alteration or modification by amendment — whether or not the possibility of such is specifically set forth within its text" (Doc. 18 at 24) is a statement of fact with no further specific applicability to the circumstances of this case or any case where the statute/contract expressly includes an amendment provision. Plaintiffs' follow-up statement that "[t]he impact of these laws do [sic] not waiver and their validity or impact are not altered by some potential, future event that may theoretically occur" (*id.* (citing *Elliott*, 876 F.3d at 936)) is another general statement of fact with no implication in the circumstances at issue here—the statement applies in *all* pre-amendment situations and the present inquiry is concerned primarily with post-amendment implications. Finally, while Plaintiffs' accurately quote *Elliott*, ("O]ne can anticipate that any state law may change in the future, but *retroactive application* to impair existing contract rights and reliance interests is another

question" (Doc. 18 at 24 (emphasis added by Plaintiffs)), the quoted material does not advance Plaintiffs' position because *Elliott* did not consider or make reference to a statute/contract which specifically addressed incorporation of statutory amendments. *See* 876 F.3d 926.

Defendants' interpretation of § 11-1121(c)'s amendment language essentially means that any and all amendments to the School Code which were and/or may be adopted after a professional employee signed a contract with the District could not substantially impair the employee's rights because the employee had no reasonable expectation that he or she had any rights under the contract which could not be altered or taken away by the legislature. (Doc. 11 at 29-30; Doc. 19 at 14, 16-18.) As discussed above, Plaintiffs do not provide support for an alternative interpretation.

With no basis to conclude that Defendants' interpretation of the statutory/contractual amendment language is inconsistent with recognized principles of statutory analysis or the law of contracts,[7] the Court finds that Defendants' interpretation is properly accepted. Thus,

---

[7] *Anderson* recognized the Indiana Supreme Court's discussion of relevant contract principles where the appellants had argued that "'a contract which does not bind both parties binds neither of them.'" 303 U.S. at 106 (quoting *Kostanzer*, 187 N.E. at 342). *Anderson* then set out *Kostanzer's* related finding:

> This proposition is undoubtedly supported by the law of contracts. But there is nothing in the law of contracts to prevent one party to a contract granting to the other the privilege or rescission or cancellation on terms not reserved to the former party. The local school corporations are agents of the state in the administration of the public schools and the General Assembly has the power to prescribe the terms of the contract to be executed by these agents.

303 U.S. at 106-07 (quoting *Kostanzer*, 187 N.E. at 342).

31

the Court accepts Defendants' interpretation of the amendment language of the contract at issue for purposes of consideration of the pending motion only. The Court finds Act 55's addition of § 11-1124(a)(5) to the prior statutory provision did not substantially impair Plaintiffs' contractual rights because Plaintiffs, based on the amendment language in their contracts, had no reasonable expectation that § 11-1124(a) would remain unchanged for the duration of their employment with the District. This conclusion is based on the facts that Plaintiffs' contracts contained the amendment language of § 11-1121(c) (Compl. ¶ 15); the additional reason for suspension identified in § 11-1124(a)(5) was adopted by statutory amendment (*id.* ¶ 18); when Plaintiffs signed their contracts they agreed to be subject to the suspension provisions of the School Code, § 11-1124(a) and amendments thereto; and Plaintiffs identify no other basis for their § 1983 claim (*see* Compl. ¶ 23). These facts show that amendment to § 11-1124(a) brought about by Act 55 could not substantially impair Plaintiffs' contractual rights regarding suspension. Put another way, by the terms of their contracts, Plaintiffs could not have had reasonable expectations that they would not be subject to legislative amendments to § 11-1124(a) or that the provision would never be amended.

Alternatively, assuming *arguendo* the validity of Plaintiffs' position that the amendments provision cannot be read as absolute (Doc. 18 at 24-25), the Court would, nonetheless, conclude that the change in law brought about by Act 55's allowing for suspension based on "economic reasons that require a reduction in professional employes,"

24 Pa. C.S. § 11-1124(a)(5), was foreseeable and, therefore, did not substantially impair contractual rights. As stated in *Elliott* "for an impairment to be substantial[,] the parties must not have anticipated the change in law." 876 F.3d at 935. *Elliott* also stated that "[t]he Supreme Court has found that a change in law was foreseeable in at least two contexts. In the first, the Court pointed to the history of 'extensive and intrusive' regulation in the affected industry." *Id.* (citing *Energy Reserves*, 459 U.S. at 413–16). In *Elliott* the change in law meant that a qualified tenured teacher who, at the time of contracting had an enforceable contractual right to be retained over non-tenured-teachers in a reduction in force, no longer had that right with the passage of the intervening legislation. 876 F.3d at 933-34. *Elliott* found the *Energy Reserves* context inapplicable based on the specific circumstances of the case: the state had regulated tenure since 1927; the state had held in 1938 that the regulations were contractual and protected by the Contracts Clause; and the state had not materially amended those terms for more than eighty years. 876 F.3d at 936 (citations omitted). Differentiating between a small and predictable step as opposed to a bill which affected basic tenure rights upon which teachers had "built their entire careers," *Elliott* concluded that theirs was not a case where the regulation granting tenure had put the plaintiff "'on notice that an entirely different scheme' would likely be imposed." 876 F.3d at 936 (quoting *Chrysler Corp. v. Kolosso Auto Sales, Inc.*, 148 F.3d 892, 894 (7th Cir. 1998)).

Here, the change brought about by §11-1124(a)(5) did not deprive Plaintiffs of the right to be retained over non-tenured teachers and neither Pennsylvania court decisions nor

legislative history indicate that the School Code provisions are contractual and protected by the Contracts Clause.[8] Rather, the School Code has been regularly amended and the there has been extensive regulation of public school education, including the relationship between teachers and school districts, through the School Code. Section 11-1124(a)(5) did not impose "an entirely new scheme" regarding tenure. Thus, unlike *Elliott*, the situation presented here is one where the change brought about by § 11-1124(a)(5) would have been foreseeable on the basis of the Pennsylvania legislature's "extensive and intrusive" regulation of public education within the state.

Further, foreseeability can also be premised on the School Code's pre-Act 55 provision which contemplated suspensions based on practical considerations related to pupil enrollment, curtailment or alteration of the educational program, school consolidation, and the creation of new school districts. 24 P.S. § 11-1124(a)(1)-(4). Before and after Act 55, suspension pursuant to the "curtailment or alteration of the educational program" provision could be based on either "a substantial decline in class or course enrollments *or to conform with standards of organization or educational activities required by law or recommended by the Department of Education.*" 24 P.S. § 11-1124(a)(2) (emphasis added). Thus, Plaintiffs were on notice, prior to the enactment of Act 55, that the articulated grounds for suspension set out in the suspension provision of the School Code were not limited to those specifically identified, i.e., "a substantial decline in class or course

---

[8] This inquiry differs from that undertaken in the previous section of this Memorandum Opinion.

enrollments," was not the only reason for suspension under § 11-1124(a)(2)—suspension related to curtailment or alteration of the educational program could also be based on undefined standards of law or the Department of Education (then called the "Department of Public Instruction"[9]). In other words, an alteration of the specific grounds for suspension set out in § 11-1124(a) was foreseeable at the time Plaintiffs entered into contracts with the District. In these circumstances, the Court concludes Plaintiffs cannot show that they had a legitimate expectation that the suspension provision of the School Code would, throughout their employment with the District, remain limited to the grounds for suspension specifically articulated when they signed their contracts. It follows that Plaintiffs cannot show a substantial impairment of their contract rights based on suspension-related expectations where the amendment articulated an additional reason for suspension. With this determination, Plaintiffs' 42 U.S.C. § 1983 action based on the Contracts Clause must be dismissed.

The Court's determination that Plaintiffs cannot show (under either parties' interpretation of the amendment provision of the School Code/contract) that their contractual rights were substantially impaired is based on the language of the statute and relevant law. The decision is not based on a deficit of facts pled, nor would additional facts change the language considered or the law applied. Therefore, the Court concludes that granting Plaintiffs leave to amend their 42 U.S.C. § 1983 claim would be futile.

---

[9] See 2017 Pa. Legis. Serv. Act 2017-55 (H.B. 178).

## B.   Remaining Claims

The conclusion regarding Plaintiffs' 42 U.S.C. § 1983 claim indicates that the claim in Count V for Declaratory and Injunctive Relief based on the Contracts Clause in the United States Constitution (Compl. ¶ 79) is properly stricken.   As the Court will grant Defendants' motion as it pertains to Plaintiffs' 42 U.S.C. § 1983 action, the Court must decide whether to retain jurisdiction over Plaintiffs' remaining claims because the remaining claims are based on state law.

28 U.S.C. § 1367(c)(3) provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."   Further, the Third Circuit has instructed "that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Here, the Court finds that there are no "considerations of judicial economy, convenience, [or] fairness to the parties" which merit this Court retaining jurisdiction over the remaining state law claims.   Accordingly, given that this Court has dismissed all the claims over which it had original jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

## V. CONCLUSION

For the reasons set out above, the Court will grant Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. 4) as to Count III for a Violation of 42 U.S.C. § 1983 and the related claim for declaratory and injunctive relief in Count V (Compl. ¶ 79) will be stricken from Count V. The Court will decline to exercise jurisdiction over the remaining state law claims. A separate Order will be filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge